UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THOMAS ZACHARY ALEC PAULK,

               Petitioner,

vs.

KEVIN KEMPF and LAWRENCE
WASDEN,

               Respondents.

Case No. 1:16-cv-00118-BLW

**MEMORANDUM DECISION
AND ORDER**

Petitioner Thomas Zachary Alec Paulk filed a Petition for Writ of Habeas Corpus challenging his state court conviction (Dkt. 3), followed by an Amended Petition (Dkt. 12), which is the operative pleading in this case. Respondent filed a Motion for Summary Dismissal, which is now fully briefed. (Dkts. 17, 24, 25.)

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is

unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## STANDARD OF LAW FOR MOTION FOR SUMMARY DISMISSAL

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

## REVIEW OF REQUEST FOR DISMISSAL
## ON STATUTE OF LIMITATIONS GROUNDS

### 1. Standard of Law

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

---

[1]      Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period in cases originating in the Idaho state courts is as follows, depending on how far a petitioner pursues his claim:

| Action Taken | Finality Occurs |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a statutory tolling provision that stops or suspends the one-year limitations period from running during the time in "which a *properly filed*

application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The "time limits on postconviction petitions are 'condition[s] to filing,' such that an untimely petition [is] not deemed 'properly filed.'" *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (quoting *Artuz v. Bennett*, 533 U.S. 4, 8, 11 (2000).

For purposes of calculating the federal statute of limitations, this statutory tolling provision applies only to "pending" actions; therefore, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur for post-conviction actions.[2]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once the federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820,

---

[2]    *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. at 418. In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (as amended) (citation omitted). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

## 2. Background

In the Seventh Judicial District in Bonneville County, Idaho, Petitioner was convicted by jury of one count of lewd conduct with a child under age sixteen and one count of forcible sexual penetration by use of a foreign object, a violation of Idaho Code § 18-6608, which requires a showing that the penetration was "for the purpose of sexual arousal, gratification, or abuse."[3] In general, Petitioner asserts that he is wrongfully convicted, because there was no showing that he committed the act for a sexual reason; rather, he asserts that he became frustrated and angry when changing the two-year-old victim's diaper, and placed his finger in her vagina and pressed down with force, causing

---

[3] The lewd conduct charge was dismissed after conviction by motion of the prosecution, as discussed later in the body of this Order. Only the forcible penetration conviction is at issue.

injury and bleeding, which subsequently required hospitalization and surgery to repair. (Dkt. 3-3, p. 1.) Petitioner also contests the trial court's admission of out-of-court statements at trial—when the child was transported to an urgent care center, she reportedly said to a health care provider, "Zackie did it to me," but the evidence also reflected that Petitioner admitted to the investigator that he placed his finger in her vagina, although he had several different stories of how or why he did so. (Dkt. 3-1.)

After conviction, Petitioner filed a direct appeal and a post-conviction action. The State alleged that Petitioner's post-conviction action was filed too late, and Petitioner sought application of equitable tolling, because he calculated his filing date from the state court register of actions, which showed the date of the remittitur of the direct appeal action as November 14, 2013, even though the true date was October 9, 2013. The post-conviction action was dismissed as untimely—a ruling that was upheld on appeal.

### 3. Discussion

Petitioner's criminal judgment was issued on December 20, 2011. (State's Lodging A-1.) On direct review, the Idaho Supreme Court denied Petitioner's petition for review on October 9, 2013. (State's Lodging B-6.) A copy of the remitter in that action was mailed to Petitioner's counsel on October 10, 2013. Nothing in the record shows that Petitioner himself received a copy or that he had notice of the remittitur date.

In an act of diligence, Petitioner checked the official register of actions in the state court. The register of actions showed a date of November 14, 2013, for the remittitur, with no indication on the record that the remittitur was actually issued more than a month

earlier, on October 9, 2013. (For example, some courts show both a date the court clerk entered the order on the register and a date the order was issued.)

As a result, Petitioner filed his state post-conviction petition on October 28, 2014 (mailbox rule), thinking he was several weeks ahead of the deadline, when, in fact, he was several weeks beyond the deadline. (*See* State's Lodgings C-2, D-1 to D-8.) According to Idaho statute, Petitioner's petition for post-conviction relief should have been filed within one year "from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." Idaho Code § 19-4902(a).

After Petitioner's case was dismissed for untimeliness, he pursued an appeal in the post-conviction matter. The Idaho Court of Appeals affirmed dismissal on untimeliness grounds on June 14, 2016. The Idaho Supreme Court denied Petitioner's petition for review, with the remittitur issued on September 16, 2016. (State's Lodgings D-4 & D-8.) Petitioner's original federal Petition was electronically filed on March 17, 2016. (Dkt. 3.)

Respondent argues that, because the state post-conviction petition was deemed improperly filed by the state courts, it is improperly filed for federal statute of limitations purposes and cannot be used to toll the federal statute. The Court agrees that statutory tolling is inapplicable here based on Idaho's improper filing rule, but equitable tolling is still available under federal equitable tolling principles.

### A. Statutory Tolling

Petitioner's judgment became final 90 days after it was entered, on January 8, 2014, which marked the expiration of the time period during which Petitioner could have filed a petition for certiorari with the United States Supreme Court. Petitioner's federal statute of limitations began running on January 8, 2014, with 366 days remaining.

Because Petitioner's state post-conviction matter was deemed untimely by the state courts, it was not" properly filed" for federal habeas purposes. *See Pace*, 544 U.S. 414 ("when a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)") (punctuation altered, citation omitted). Therefore, the matter did not statutorily toll the federal statute of limitations, and the one-year time period expired on January 9, 2015.

Petitioner's federal Petition for Writ of Habeas Corpus was signed on March 16, 2016, and filed on March 17, 2016. That was too late for statutory tolling to apply.

### B. Equitable Tolling

The equitable tolling inquiry is different from the statutory tolling inquiry. Even if the state court concludes that the state post-conviction matter was untimely, the federal inquiry focuses on why the federal petition was untimely and is based on federal, not state, equitable tolling principles. Determining whether equitable tolling is warranted is a fact-specific inquiry. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (as amended).

Petitioner argues that, while the Idaho Supreme Court issued its remittitur on October 9, 2013, the district court did not record the remittitur on its register of actions (docket) until five weeks later, on November 14, 2013. The record reflects that the Clerk of Court mailed a copy of the remittitur to counsel of record on October 10, 2013. (State's Lodging D-4, pp. 1-2.) There is no indication in the record that counsel ever sent a copy of the remittitur to Petitioner.

Petitioner argues that the district court's lateness in recording the remittitur caused his state post-conviction action to be tardy, which, in turn, caused it to be disqualified from use as a tolling device in this federal habeas corpus matter.

This is not a case of simple attorney negligence in failing to forward the remittitur to Plaintiff. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (attorney negligence is not a sufficient basis for equitable tolling). Rather, Plaintiff diligently sought to learn the deadline by checking the official state court register of actions. Nothing in the record reflects that the register of actions has any warning on it that the dates not only may be inaccurate, but the dates may be as much as a month off. Even if Petitioner's attorney was negligent in failing to give Petitioner the remittitur, Petitioner's diligence in consulting the official state record himself supersedes any such negligence.

When the Idaho Court of Appeals considered Petitioner's situation, it explained that Idaho recognizes only three situations where equitable tolling applies: (1) being incarcerated in an out-of-state facility without legal representation or access to Idaho legal materials; (2) where a mental disease and/or psychotropic medicine renders a petitioner incompetent and prevents a petition from earlier pursuing challenges to his

conviction; and (3) where the petitioner discovers too late the facts giving rise to the claim. (State's Lodging D-4, pp. 4-5.) The Idaho Court of Appeals concluded that Petitioner's situation fit none of the recognized exceptions, and it declined to craft a new exception to excuse Petitioner's circumstance. Even if counsel did not communicate to Petitioner the information that the remittitur had been issued and even though the register of actions showed an inaccurate remittitur date, those facts "did not create a rare and exceptional circumstance beyond Paulk's control that prevented him from filing a timely petition, nor does the lack of communication fit into the three recognized instances of equitable tolling." (*Id.*, p. 5.) Therefore, Petitioner's post-conviction application was deemed untimely without adequate excuse, and the summary dismissal of his post-conviction petition was affirmed.

The federal courts' view of equitable tolling is quite different from the Idaho courts' view. The United States Supreme Court "follow[s] a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" *Holland*, 560 U.S. at 650 (*citing Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248 (1944). This standard of "'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices.'" *Id.* (citation omitted).

As noted above, in federal court, a petitioner is entitled to equitable tolling where (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance

stood in his way and prevented timely filing. *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* True to the nature of equity, the term "extraordinary circumstances" has not been defined. A federal court must review each tolling request on a case-by-case basis to "examin[e] [the] detailed facts." *Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (case remanded for the district court to consider whether the petitioner was entitled to equitable tolling for denial of access to his files during two temporary transfers that lasted 82 days).

A review of existing cases helps inform the Court's analysis of what constitutes an "extraordinary circumstance." In *Grant v. Swarthout*, the United States Court of Appeals for the Ninth Circuit determined that where inmate Grant was "entirely dependent on prison officials to provide him with the requested document and he could not file his petition for habeas corpus without it," equitable tolling was appropriate. 862 F.3d 914, 925 (2017).

Here, Petitioner also was "completely dependent" on state court officials to either enter the correct date the remittitur was entered on the register of actions, or to include a note that explained the difference between the entry date and the issue date. No layperson should be expected to guess whether the date reflected on the register of actions is not actually the issue date. In fact, because the *issue* date of an order, and not the date an order is entered on the register, is a pertinent date from which many litigation deadlines are calculated, one would *expect* the register to reflect *issuing*, not docketing, dates. *See*

Idaho Code § 19-4902(a) (statute of limitations for post-conviction petition expires one year from the determination of appeal").

The next question is how much tolling does the register-of-actions confusion warrant? Petitioner is entitled to equitable tolling for the time period between October 9, 2013, and November 14, 2013—the time frame marking the difference between the date the remittitur was issued and the date the register of actions showed that it was issued. Thus, the Court uses November 14, 2013, as the date of finality marking the beginning of the 90 days in which to file for a writ of certiorari with the United States Supreme Court. That would make Petitioner's federal statute of limitations run from February 12, 2014, to February 12, 2015.

If the Court equitably tolls the entire time the post-conviction application was pending because of the register-of-actions confusion, but not any time when Petitioner did not have any state court action pending, then the calculation looks like this: Petitioner used up 256 days of his federal statute of limitations period when no state court action was pending between February 15, 2014 (when he thought his judgment was final) and October 28, 2014 (when he thought he timely filed his post-conviction petition). Equitable (not statutory) tolling remained in effect while the post-conviction action was pending from October 28, 2014, until September 7, 2016, when the remittitur in his post-conviction action was issued, whereupon his equitable tolling ended. Petitioner, however, filed his federal petition on March 17, 2016, even before the tolling period should have ended, and thus it was timely.

Petitioner filed his original Petition on March 17, 2016—just ten days after the State filed its brief in the state post-conviction appeal asserting that the post-conviction petition was untimely—as a protective measure, because it was becoming clear to him that his entire state post-conviction action may have been filed in vain. Relying on the state register of actions to calculate his state post-conviction filing caused Petitioner's federal petition to be late, because he was carefully calculating his dates in reliance on the state register of actions, so as not to be late in his state and federal filings. He did not miscalculate. Had the register of actions shown the correct date, his otherwise diligent actions in this case demonstrate that his state and federal filings would have been timely—because that is exactly how he planned it. *See Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008).[4]

Therefore, the Court concludes that Petitioner's federal action was timely based on federal equitable, not statutory, tolling. Other similar cases are in accord.

In *Corjasso v. Ayers*, 278 F.3d 874 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuit allowed equitable tolling for a prisoner's habeas petition because the federal district court had improperly dismissed the petition because it had a

---

[4]     Similarly, in *Harris*, the Court explained:

   The fact that Harris could have filed a timely federal habeas petition at a certain point in time is not dispositive. The critical fact here is that Harris relied in good faith on then-binding circuit precedent in making his tactical decision to delay filing a federal habeas petition. Harris' failure to file a timely petition is not the result of oversight, miscalculation or negligence on his part, all of which would preclude the application of equitable tolling. *See Lawrence*, 127 S.Ct. at 1085. Harris was undoubtedly aware of when AEDPA's statute of limitations would expire under our rule in *Dictado*. Harris presumably chose his tactical strategy precisely because he believed that, under *Dictado*, he could pursue relief in state courts without jeopardizing his ability to file a federal habeas petition.

515 F.3d at 1055.

**MEMORANDUM DECISION AND ORDER - 13**

cover sheet from the wrong judicial district, even though the prisoner had "whited-out" the word "Northern" and written in "Eastern." When the problem was corrected by submitting a new cover sheet, the sheet was never attached to the petition, causing further delay. When the petition was finally reviewed, the district court dismissed it because of unexhausted state claims. However, during the delays in federal court administration, the petitioner lost valuable time that otherwise would have been available to exhaust his state remedies. The Ninth Circuit court therefore reversed the decision and applied equitable tolling, ruling that "the district court's error and its consequences consumed 258 days of that 365-day period" for filing a habeas petition under the AEDPA. *Id*. at 878. *See also Harris v. Carter*, 515 F.3d 1051, 1057 (9th Cir. 2008) ("Equitable principles dictate that we toll AEDPA's statute of limitations in the rare case where a petitioner relies on our legally erroneous holding in determining when to file a federal habeas petition.").

In *Pliler v. Ford*, the United States Supreme Court remanded the case to the Ninth Circuit Court for consideration of equitable tolling given the Ninth Circuit's "concern that respondent had been affirmatively misled" by the district court." 542 U.S. 225, 234 (2004). *See also id*. at 235 (O'Connor, J., concurring) ("Nevertheless, if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate."); *Brambles v. Duncan*, 412 F.3d 1066, 1070 (9th Cir. 2005) ("Consistent with the Court's decision in *Pliler*, the sole issue before us is whether [petitioner] was affirmatively misled by the district court's instructions.").

In summary, as discussed above, statutory tolling is not warranted because the state court determined, according to state law principles, that Petitioner's post-conviction

petition was untimely; that means the petition was not "properly filed" under federal case law interpreting the federal tolling statute. *See Pace*, 544 U.S. at 413. However, federal equitable tolling is available, because Petitioner acted diligently, and the incorrect or confusing date on the official register of actions misled Petitioner into believing that his state and federal statutes of limitations were longer. The state clerk of court's error or practice misled Petitioner and caused him to miss his federal filing deadline, because he formulated a filing plan for both his state and federal actions based on the register of actions date, which was incorrect or confusing, due to no fault of his own.

## REVIEW OF REQUEST FOR DISMISSAL FOR
## FAILURE TO EXHAUST STATE COURT REMEDIES

### 1. Standard of Law

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but

the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered to have been "procedurally defaulted." *Id*. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment right to effective assistance of counsel may, under certain circumstances, serve as cause to excuse the procedural default of other claims. *Murray v. Carrier*, 477 U.S. at 488. However, an allegation of ineffective assistance of direct appeal counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance of direct appeal counsel claim is, itself, not procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal court can consider ineffective assistance of direct appeal counsel as cause to excuse the default of underlying habeas

claims, a petitioner generally must have presented the ineffective assistance of direct appeal counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to another related but different topic—errors of counsel made on *post-conviction review* that cause the default of other claims—the general rule on procedural default is that any errors of a defense attorney during a post-conviction action *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752. This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

The case of *Martinez v. Ryan*, 566 U.S. 1 (2012), established a "limited qualification" to the *Coleman* rule. *Id*. at 1319. In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The *Martinez v. Ryan* exception is applicable to permit the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel, *id*. at 16, and trial counsel conflict-of-interest claims, *Pizzuto v. Ramirez*, 783 F.3d 1171, 1178 (9th Cir. 2015). The exception has not been extended to other types of claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124,

1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*).

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). "'Actual innocence means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The standard is demanding and permits review only in the "extraordinary" case. *Schlup*, 513 U.S. at 327 (citation omitted).

## 2. Discussion of Procedural Default

The federal Petition for Writ of Habeas Corpus includes the following claims:

• The trial court improperly admitted the victim's out-of-court statement on the erroneous conclusion that the statement was an excited utterance or made for the purpose of medical treatment, violating his Fifth, Sixth, and Fourteenth Amendment right to a fair trial and due process of law.

• Fundamental error occurred when the trial court improperly admitted the out-of-court statement without providing Petitioner with an opportunity to cross-examine

the witness, "resulting in undue influence on the jury; and, the conviction was based on less than proof beyond a reasonable doubt for each and every element of the charged crime(s), in violation of the Petitioner's right to a fair trial and due process of law guaranteed under the Fifth, and Fourteenth Amendments to the United States Constitution." (Dkt. 12, p.8.)

• Ineffective assistance of trial counsel on six different grounds.

• Ineffective assistance of direct appeal counsel on two grounds. (Dkt. 14, p. 4.)

Petitioner raised only one federal constitutional claim on direct appeal—whether his Sixth Amendment Confrontation Clause rights were violated when the child victim's statement, "Zackie did it," was admitted into evidence. (State's Lodging B-1, pp. 14-21.) He also raised claims that the Idaho Rules of Evidence were violated and that errors occurred during sentencing. (*See* State's Lodging B-1.)

Respondent argues that Petitioner's state post-conviction petition did not serve to properly exhaust any of his claims because the state courts determined that the petition was procedurally barred as untimely, and, therefore, refused to hear the merits of any of his claims. The Court agrees and concludes that the procedural bar is adequate—the Idaho courts have not budged from their narrow definition of equitable tolling. The bar is also independent, because the state statute of limitations is designed to aid state court administration of cases and guard against stale claims to protect its citizens; it is not intertwined with federal law.

### 3. Discussion of Cause and Prejudice

Petitioner cannot proceed to the merits of his procedurally defaulted claims without a showing of cause and prejudice. For the following reasons, the Court concludes that Petitioner can show cause, but not prejudice, for the default of his claims.

### A. Two Claims re: Victim's Out-of-Court Statement

Petitioner's claims that improper admission of the victim's out-of-court statement on grounds that it was an excited utterance or made for the purpose of medical treatment and that it violated his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and due process of law are procedurally defaulted, because he presented only a Sixth Amendment *Confrontation Clause* argument to the Idaho Supreme Court on direct appeal. Plaintiff does not offer a cause and prejudice argument, nor is one apparent from the record. Therefore, the procedural default of these claims is not excused.

### B. Claims of Ineffective Assistance of Trial Counsel and Direct Appeal Counsel

Petitioner also desires to pursue six ineffective assistance of trial counsel claims and two ineffective assistance of direct appeal counsel claims. Petitioner asserts that he brought these claims in his initial post-conviction petition. The claims are procedurally defaulted because the state courts found them procedurally barred under state law.[5]

Petitioner asserts that the misleading state register of action functioned as an objective factor beyond his control and external to his defense that impeded his efforts to file his state petition on time. *See Murray*, 477 U.S. at 488. The Court agrees, based on the analysis set forth above, and finds that cause is established.

---

[5] These claims may also be procedurally defaulted because Petitioner raised only the issue of whether the claims were timely on appeal from dismissal of the post-conviction petition. However, Petitioner has a good argument that the district court "indicated that it would forgo briefing and consideration of the substance of the claims until after it decided the timeliness issue. (Dkt. 24, p. 13, citing State's Lodging C-2, pp. 11-12.) Because the Court finds the claims procedurally defaulted on another ground, it need not consider Petitioner's argument.

To address the prejudice prong of the cause and prejudice exception, Petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. at 170.

1) <u>Four Claims Centered on the "No Sexual Gratification" Issue (Trial and Direct Appeal Counsel)</u>

Petitioner asserts that his trial counsel was ineffective for failing to file a motion for a new trial. Petitioner was convicted of lewd conduct, which has a required element of sexual gratification. After conviction and judgment, Petitioner admitted on a polygraph examination that he penetrated the child's vagina with his finger out of anger, not for sexual gratification. As a result, the prosecution filed a post-judgment motion to dismiss the lewd conduct charge, because sexual gratification was a necessary element of that crime.

Petitioner asserts that the charge he stands convicted of, penetration with a foreign object, also should have been dismissed. That statute requires one of the following: sexual arousal, sexual gratification, or sexual abuse. The prosecution also stated in its motion to dismiss the lewd conduct claim that it was certain that sexual abuse was the object of the penetration crime.

Petitioner mistakenly believes sexual *gratification* and sexual *abuse* are one and the same. However, fundamental statutory construction principles dictate that each word must be given separate meaning, or the additional words would not have been included in

the statute. *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991);

*Melton v. Alt*, 408 P.3d 913, 917-18 (Idaho 2018) ("the Court must give effect to all the

words and provisions of the statute so that none will be void, superfluous, or redundant").

The facts that the evidence showed Petitioner told police that he accidentally put his

finger into a two-year-old child's vagina and that she suffered a severe tearing injury as a

result and that Petitioner changed his story several times—are enough for the jury to find

that Petitioner intended sexual abuse. (State's Lodging A-3, pp. 515.) Petitioner has

shown no prejudice by trial counsel's failure to file a motion to dismiss the penetration

charge. Therefore, although Petitioner has met the cause prong, he cannot meet the

prejudice prong, and his procedural default of these claims remains unexcused.

For the same reason, Petitioner's two ineffective assistance of *direct appeal*

counsel claims based on the same facts fail. It is not ineffective to winnow out claims that

are without merit, like these—that counsel was ineffective for failing to assert on appeal

that Petitioner's right to a new trial on the penetration charge was violated and that the

State failed to prove "elements of sexual intent relative to the statutory

requirement/legislative intent" on the penetration claim. (Dkt. 12, p. 11.)

2) Failure to Investigate Claim

Petitioner asserts that trial counsel was ineffective for failure to investigate.

Petitioner has included no facts in support of this claim in his Amended Petition. (Dkt.

12.) Therefore, Petitioner has failed to show prejudice.

### 3) Failure to File Motion to Suppress

Petitioner asserts that trial counsel was ineffective for failure to move to suppress evidence. Petitioner has included no facts in support of this claim in his Amended Petition. Petitioner has provided no facts or argument regarding cause and prejudice in his Response to Respondent's Motion to Dismiss. Therefore, his procedural default remains unexcused.

### 4) Failure to Disqualify Jurors for Cause or Peremptorily

Petitioner has included no facts in support of this claim in his Amended Petition. In the original Petition, Petitioner alleges that counsel should have removed Juror Shana O'Dell from the jury. Petitioner has provided no facts or argument regarding cause and prejudice. Therefore, his procedural default remains unexcused.

### 5) Failure to Object re: Jury Influences

Petitioner asserts that trial counsel was ineffective for failure to object to improper influences on the jury. Petitioner has provided no facts in his Amended Petition, and no facts or argument regarding cause and prejudice in his Response to the Motion to Dismiss. Therefore, his procedural default remains unexcused.

### 6) Failure to Investigate Mitigation

Petitioner asserts that trial counsel was ineffective for failure to conduct a meaningful investigation into mitigating facts discovered in the presentence investigation (PSI) and psychosexual evaluation (PSE). Petitioner has included no facts in support of this claim in his Amended Petition. In his original Petition, Petitioner asserted that counsel should have requested additional funding from the court to conduct additional

neurological testing that was recommended by psychological evaluator Dr. Kenneth Lindsey, so that a stronger case could have been presented at sentencing. However, contrary to Petitioner's allegations, Dr. Lindsey stated in his report that, with respect to the suspected neurological issues, "[s]entencing need not await these evaluations." (State's Lodging A-13.) Therefore, Petitioner has not presented enough evidence to show that counsel performed deficiently or that Petitioner's defense at sentencing or re-sentencing was prejudiced. Petitioner's procedural default remains unexcused.

Because Petitioner has chosen not to make any argument that his attorney's actions prejudiced his defense, the Court need not further address procedural default, including whether lack of counsel during initial post-conviction proceedings caused his post-conviction petition to be filed late. (In addition, Petitioner asserts that he brought all his ineffective assistance claims in the initial post-conviction proceedings, which would negate an assertion that *Martinez v. Ryan* would apply to excuse the *non-presentation*—as opposed to the *untimeliness*—of such claims.) Petitioner has requested an evidentiary hearing, but because he has brought forward virtually no facts to support his claims, the Court concludes that an evidentiary hearing is not required. Finally, no grounds for a claim of actual innocence are apparent from the record. Therefore, Petitioner will be permitted to proceed to the merits of only his Confrontation Clause claim.

## ORDER

**IT IS ORDERED:**

1.     Respondents Motion for Partial Summary Dismissal (Dkt. 17) is

         GRANTED in part, and DENIED in part. All of Petitioner's claims are

DISMISSED with prejudice on procedural default grounds except the Sixth Amendment Confrontation Clause claim.

2.      Respondent shall file an answer to the remaining claim **within 60 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

3.      No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

4.      No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

5.      Respondent shall re-lodge State's Lodging C-1 in electronic form with the Clerk of Court with Respondent's Response to the Petition.



DATED: March 24, 2018

_____

B. Lynn Winmill
Chief U.S. District Court Judge