UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THOMAS ZACHARY ALEC PAULK,

                    Petitioner,

vs.

JOSH TEWALT and LAWRENCE
WASDEN,

                    Respondents.

Case No. 1:16-cv-00118-BLW

**MEMORANDUM DECISION
AND ORDER**

Petitioner Thomas Zachary Alec Paulk is proceeding on his Amended Petition for
Writ of Habeas Corpus. (Dkt. 12.) The remaining claims in the Amended Petition are
now fully briefed and ripe for adjudication on the merits. (Dkts. 12, 30.)

The Court takes judicial notice of the records from Petitioner's state court
proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v.
Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record,
including the state court record, the Court finds that the parties have adequately presented
the facts and legal arguments in the briefs and record and that oral argument is
unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following
Order.

## BACKGROUND

The facts upon which Petitioner was convicted are as follows:

Paulk lived with his girlfriend, Ms. Orme, and her two-year-old daughter, L.B. On the evening at issue, Orme left the house to pick up dinner, leaving Paulk at home to watch L.B. Paulk allegedly became frustrated while changing L.B.'s diaper and placed his finger(s) in her vagina and pressed down with force, causing injury to L.B.'s vagina. Paulk called Orme and told her that L.B. was bleeding. Orme returned home and took L.B. to Mountain View Hospital Ready Care. During the initial examination, the intake nurse asked L.B., "[D]id you get an owie?" L.B. responded, "Zackie did it."

After being examined by a doctor, L.B. was sent to the hospital and surgery was performed to repair her injury [which was described as a laceration from L.B.'s vagina to nearly her anal opening].[1] The doctor reported the incident to law enforcement officers, and police officers went to the home to interview Paulk. After telling police officers various stories of how the injury occurred, Paulk eventually admitted to placing his finger in L.B.'s vagina out of anger and pushing down, causing the injury.

(State's Lodging B-4, pp. 1-2.)

For these acts, Petitioner was convicted by jury of lewd conduct with a child under sixteen under Idaho Code § 18-1508, and forcible sexual penetration by use of a foreign object under Idaho Code § 18-6608. Judgment was entered on December 21, 2011.

As explained in detail later in this Order, after Petitioner was sentenced, the State dismissed the lewd conduct count, and the conviction and sentence on that count were vacated. Petitioner was then re-sentenced to the same sentence—5 years determinate with 10 years indeterminate—for only the forcible penetration conviction.

---

[1] State's Lodging B-4, p. 5 (parenthetical added).

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF LAW FOR HABEAS CORPUS REVIEW

### 1. Deferential Review

Where the petitioner files a federal habeas corpus action to challenge a state court judgment, Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S 415, 426 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

To assess whether habeas corpus relief is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34,

41 (2011). The deferential standard of section 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Richter*, 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

However, where the state's highest court did not issue a reasoned decision, courts review the "last related state-court decision that does provide a rationale"—using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)—and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).[2]

## 2. De Novo Review

A federal court may review a habeas corpus claim de novo under several circumstances: (1) if the state appellate court did not decide a properly-asserted federal claim, (2) if the state court's factual findings are unreasonable under § 2254(d)(2), or (3) if an adequate excuse for the procedural default of a claim exists. In such instances, the stricter provisions of § 2254(d)(1) do not apply. *Pirtle v. Morgan*, 313 F.3d 1160,

---

[2] "The State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson*, 138 S. Ct. at 1192.

1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw

from both United States Supreme Court and well as circuit precedent, limited only by the

non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not

unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. §

2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a

state court factual determination is unreasonable, or if there are no state court factual

findings, the federal court is not limited by § 2254(e)(1), but may consider evidence

outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray

v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## REVIEW OF CONFRONTATION CLAUSE CLAIM

After conviction, Petitioner raised a Confrontation Clause claim on direct appeal.

He was unsuccessful. The merits of this claim are now ripe for adjudication.

### 1. Decision of State Appellate Court

The Idaho Court of Appeals did not address whether the victim's statement

violated the Confrontation Clause, because it determined that the error was harmless.

(State's Lodging B-4, pp. 1-4.) The Idaho Supreme Court denied the petition for review

without comment on this claim. (State's Lodging B-6.) Therefore, review of this claim

will be twofold: (1) the Court will review de novo the merits of the Confrontation Clause

that neither Idaho appellate court addressed, and (2) the Court will deferentially review

the harmless error issue decided by the Idaho Court of Appeals.

## 2. Confrontation Clause – Governing Precedent

The Confrontation Clause of the Sixth Amendment guarantees an accused the right to confront and cross-examine the witnesses against him. This right of confrontation prohibits the admission of testimonial out-of-court statements unless (1) the declarant is unavailable to testify and (2) the accused had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Testimonial statements are those that are made for purposes of investigation or prosecution, such as the following: (1) statements made in prior testimony; (2) "[s]tatements taken by police officers in the course of interrogations"; (3) "formalized" statements, e.g., affidavits, depositions, and confessions; (4) "pretrial statements that declarants would reasonably expect to be used prosecutorially"; and (5) "statements that were made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." *Id*. at 51-52 (internal quotation marks omitted). "[N]on-testimonial statements do not implicate the Confrontation Clause" because they are not made for purposes of investigation or prosecution. *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).

In *Ohio v. Clark*, 135 S.Ct. 2173, 2181 (2015), the United States Supreme Court decided a claim very similar to the one at issue. L.P., a three-year-old boy, attended preschool. His teacher saw that he had a bloodshot eye, and she asked him what had happened. He said, "nothing," but eventually told her he had fallen. The teacher then observed, "red marks, like whips of some sort," and notified the lead teacher, who asked L.P., "Who did this? What happened to you?" *Id*. at 2178.

Appearing somewhat "bewildered," L.P. said "something like, 'Dee, Dee.'" *Id*. When asked if Dee was "big or little," L.P. responded, "Dee is big." *Id*. The lead teacher then informed her supervisor, who lifted L.P.'s shirt, saw more injuries, and called a child abuse hotline to alert authorities about the suspected abuse. *Id*.

Upon these facts, the Supreme Court concluded that L.P.'s statements "were not made for the primary purpose of creating evidence of Clark's prosecution." *Id*. Specifically, the Court noted that "L.P.'s statements occurred in the context of an ongoing emergency involving suspected child abuse," which meant "the teachers needed to know whether it was safe to release L.P. to his guardian at the end of the day." *Id*. "The teachers' questions were meant to identify the abuser in order to protect the victim from future attacks." *Id*.

"At no point did the teachers inform L.P. that his answers would be used to arrest or punish his abuser, nor did L.P. say that he intended his statements to be used by the police or prosecution. In fact, the Court explained: "Statements of young children will rarely, if ever, implicate the Confrontation Clause. Few preschool students understand the details of our criminal justice system." *Id*. at 2181-82.

### 3. Whether a Confrontation Clause Violation Occurred

The facts are straightforward. Petitioner called to tell Nicole Orme, the mother of the two-year-old victim L.B., that she needed to come home immediately because L.B. had fallen and was bleeding. Orme arrived home, looked at the injury, and took L.B. to the Mountain View Ready Care Center. There, Nurse Melissa Boyce, as part of the intake

of L.B., asked her, "Did you get an owie?" L.B. answered, "Zackie did it." (State's Lodging A-3, p. 296.)

Boyce testified at trial that she asks the same questions of every person presenting themselves in the urgent care center: "Those questions are all my job. *The doctor needs to know specifically what brings them in, what happened,* what – initially I ask them all those questions *so he can begin the treatment process.*" (State's Lodging A-3, p. 293 (emphasis added).) L.B.'s forensic examination occurred later and was conducted by specially-trained forensic medical personnel.

Petitioner asserts that that the victim's statement was elicited to assess the injury for law enforcement purposes, not to aid in medical diagnosis or treatment, and, therefore, the statement should have been considered testimonial. This position has no support in the record. Petitioner's counsel had an opportunity to cross-examine the nurse about her statement that the question was asked as part of the regular intake routine to prepare the patient's record for the treating doctor, and about the fact that Boyce was L.B.'s aunt by marriage (L.B.'s mother was divorced from Boyce's husband's brother).

L.B. was two years old. Nothing in the record reflects that L.B. intended that her response to the question was intended to be used in a criminal investigation or proceeding. There is no evidence that L.B. knew anything about the criminal law system.

On de novo review, the Court concludes that L.B.'s statement was not testimonial, just as the child's statements in *Clark*. Therefore, the Confrontation Clause is inapplicable and the claim fails to warrant habeas corpus relief.

### 4. Harmless Error - United States Supreme Court Precedent

The Idaho appellate courts chose to bypass the merits of the Confrontation Clause claim and rely on harmless error precedent. Because the Idaho Court of Appeals issued a reasoned decision on that ground, this Court reviews the decision under the deferential review standard of 28 U.S.C. § 2254.

The Idaho Court of Appeals set forth the standard for harmless error review as follows: "[T]he state has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict." (State's Lodging B-4, p. 2.) Confrontation Clause claims are susceptible to harmless error review, and the Court of Appeals identified the correct standard for review of claims on direct appeal that was established in *Chapman v. California*, 386 U.S. 18, 24 (1993). A different standard of review is applicable to review of claims on collateral review—from *Brecht v. Abrahamson*, 507 U.S. 619 (1993)—that the federal court cannot grant a writ of habeas corpus unless it has "grave doubt about whether a trial error of federal law 'had substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Under § 2254, a federal district court must accord deference to a state court's *Chapman* harmless error determination. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003). However, in *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007), the United States Supreme Court held that "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, *supra*, whether or not the state appellate court recognized the error and reviewed it for

harmlessness under the "harmless beyond a reasonable doubt" standard set forth in

*Chapman*. *Id*. at 121-22. In a practical sense, because Brecht "obviously subsumes" the

AEDPA/Chapman test, the Supreme Court has observed that "it certainly makes no sense

to require formal application of both tests. *Id*. at 120. The United States Court of Appeals

for the Ninth Circuit has aptly distilled this conglomeration of standards as application of

"the *Brecht* test, but ... with due consideration of the state court's reasons for concluding

that the error was harmless beyond a reasonable doubt." *Jones v. Harrington*, 829 F.3d

1128, 1141–42 (9th Cir. 2016) (citing *Davis v. Ayala*, 135 S.Ct. 2187, 2198 (2015)).

The harmless error rule arises from the principle that a defendant is entitled to a

fair trial, but not a perfect one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

Harmless error analysis is does not apply to all errors, but applies to Confrontation

Clause errors.  Under the *Brecht* harmlessness analysis, "if a judge is in grave doubt"

about the effect of the error on the jury, the error is not harmless, and petitioner must

prevail. *O'Neal v. McAninch*, 513 U.S. 432, 438-39 (1995). *Grave doubt* "means that,  in

the judge's mind, the matter is so evenly balanced that he feels himself in virtual

equipoise as to the harmlessness of the error." *Id*. at 435.

Factors to consider regarding errors in witness testimony include: "the importance

of the witness' testimony in the prosecution's case, whether the testimony was

cumulative, the presence or absence of evidence corroborating or contradicting the

testimony of the witness on material points, the extent of cross-examination otherwise

permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*,

475 U.S. at 684.

**5. Discussion of Harmlessness Determination**

As set forth above, the facts are undisputed. The victim told the nurse only that Petitioner caused the injury—"Zackie did it"—no more. (State's Lodging A-1, p. 296.) Petitioner's own confession is much more detailed than the victim's general statement to the nurse. At trial, Petitioner did not testify, but Officer Patrick McKenna testified about what Petitioner said on the day of the incident:

> Q.      Did Mr. Paulk make any other statements?
>
> A.      Yes, he did.
>
> Q.      Was there a conversation? Were you guys talking during that point, or was there just simply a statement by him?
>
> A.      There was just simply a statement by him.
>
> Q.      Would you indicate to the Court what that statement was?
>
> A.      Mr. Paulk was crying. He turned around and— if I may reference my notes again. I know it's a quote, so I want to make sure I get that quote right.
>
> As Paulk was crying, he told me that he wanted to tell me what really happened. Paulk then told me he was frustrated, but not mad, and [L.B.] would not stop crying about her butt hurting. Paulk told me that he put his finger inside of [her] and pushed down really hard, causing the damage to the vaginal area.

(State's Lodging A-3, p. 31.) Nicole Orme, the victim's mother and Petitioner's then-girlfriend, also testified that she heard the intake nurse ask the question and heard the child say, "Zackie did it," corroborating the nurse's testimony. (*Id.*, p. 199.) Both the nurse and the mother were cross-examined by Petitioner's defense counsel. In addition,

defense counsel presented testimony of a relative who said that L.B. often said "Zackie did it," in jest, after she and Petitioner had been playing together.

Overall, the strength of the prosecution's case as to causation was strong. In addition to Petitioner's confession to the police officer, the testifying doctor and nurse both stated that the injury could have been caused by a finger pressing down in the child's vagina. The Court concludes that all the *Van Arsdall* factors, other than the opportunity to cross-examine the child victim, weigh in favor of harmlessness. The Court agrees that Petitioner was not prejudiced by the victim's statement primarily because his own statement covered the same information in much more detail. The admission of the victim's statement, "Zackie did it," had no substantial and injurious effect or influence in determining the jury's verdict. The result is the same under either *Chapman* or *Brecht*— the Court is confident that no harmful error of any magnitude occurred. Therefore, the Confrontation Clause claim does not warrant habeas corpus relief and is subject to dismissal with prejudice.

## DE NOVO REVIEW OF INEFFECTIVE ASSISTANCE CLAIM

### 1. State Court Decision

The state courts determined that Petitioner's ineffective assistance of trial and direct appeal counsel claims were procedurally barred under state law. As a result, this Court determined that the claims were procedurally defaulted in federal court and, further, that Petitioner did not show that prejudice resulted from counsel's failure to raise the claims.

Petitioner now asks the Court to reconsider whether he has shown prejudice for the claim related to counsel's failure to request a new trial on the penetration charge after the State filed a motion to dismiss the lewd conduct charge, admitting there was no evidence of intent to commit the act for the purpose of sexual gratification. The Court will review this claim de novo on the merits rather than address prejudice for purposes of procedural default.

## 2. Nature of Claim

The lewd conduct statute has a required element that the act be "done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or [a] third party." Idaho Code § 18-1508. After conviction of both charged counts, Petitioner admitted on a polygraph examination that he penetrated the child's vagina with his finger out of anger, not for sexual gratification. The psychosexual evaluator concluded similarly.

After sentencing, the prosecution filed a post-judgment motion to dismiss the lewd conduct conviction, because sexual gratification was a necessary element of that crime and sufficient facts regarding that element did not exist.

Petitioner asserts that, after the State dismissed one of the counts for lack of intent, defense counsel was ineffective for failing to file a motion for new trial because of insufficient evidence of intent relating to the charge of penetration with a foreign object. He further asserts that direct appeal counsel was ineffective for failing to raise claims arising from the same facts on direct appeal.

### 3. Law Governing Ineffective Assistance Claims

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

Prejudice under these circumstances means there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

### 4. Idaho Standard of Law for New Trials

Idaho Code §19-2406, governing new trials, provides, in pertinent part:

> When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:
>
> [1. – 5. omitted]
>
> 6. When the verdict is contrary to law or evidence.
>
> 7. When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial.

In addition, Idaho Rule of Criminal Procedure 34 states that a defendant's motion for a new trial may be granted "if required in the interest of justice." However, "Rule 34 does not create additional grounds for granting a new trial but, rather, provides the standard for determining whether a new trial should be granted when one or more of the statutory bases are present. *State v. Howell*, 54 P.3d 460, 462 (Ct. App. 2002).

In addition, "a new trial cannot be granted on the ground that the evidence was insufficient to prove the offense of which the defendant was found guilty." *State v. Lemmons*, 354 P.3d 1186, 1191 (Idaho 2015). "A purported grant of a new trial for that reason is, in legal effect, an acquittal." *Id*.

### 5. Discussion

Petitioner has not specifically identified one of the statutory grounds listed above for his motion for a new trial, but asserts that he has a "right" to a new trial. Because insufficiency of the evidence is not a ground for relief, he must look to another ground. The only Idaho Code § 19-2406 grounds that might fit his argument are subsection (6),

that "the verdict is contrary to law or evidence," or subsection (7), that he discovered new material evidence that he could not with reasonable diligence have discovered and produced at trial.

Within the context of an ineffective assistance of trial counsel claim, Petitioner must show a reasonable probability that a motion for a new trial would have been granted. Petitioner argues that the following items show a motion for a new trial would have been granted: (1) the polygraph showed that Petitioner was not lying about having penetrated the victim's vagina out of anger, and not for sexual gratification; (2) the psychosexual evaluator opined that Petitioner's crimes were not sexual in nature at all; and (3) six years after Petitioner's crime and in response to a crime where teens pushed a coat hanger into the anus of a developmentally disabled football player in a high school locker room, the state attorney general persuaded the legislature to amend the penetration statue to omit the words, "for sexual arousal, gratification, or abuse"; this action shows that intent *was* required under the statute existing at the time of Petitioner's conviction.

From the face of Petitioner's three arguments, the Court can rule out ground (7)— that he discovered new material evidence that he could not with reasonable diligence have discovered and produced at trial. Petitioner could have retained a psychologist to act as an expert witness for him at trial but he did not act with reasonable diligence to do so. He could *not* have introduced polygraph test results because of Idaho law, as explained below. Finally, a later change in the statute is not "new discoverable evidence." Therefore, Petitioner is left showing that ground (6) applies—the verdict is contrary to law or evidence. For the reasons that follow, the Court concludes that Petitioner has not

shown that the verdict is contrary to law or evidence; therefore, a motion for new trial would not have been successful.

### A. Discussion of Sexual Abuse Mens Rea

The underlying premise of Petitioner's assertion that dismissal of one sexual offense warrants dismissal of the other is without the most basic support. The offenses are governed by different statutes. The charge that was dismissed requires an intent to arouse, appeal to, or gratify lust, passions, or sexual desires, while the charge that remains requires an intent to sexually arouse, gratify, *or* abuse. The legislature used different words and disjunctive conjunctions; therefore, a different meaning can be inferred between statutes and among descriptors within each statute. Fundamental statutory construction principles dictate that each word must be given separate meaning, or the additional words would not have been included in the statute. *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991); *Melton v. Alt*, 408 P.3d 913, 917-18 (Idaho 2018) ("the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant").

Specifically, the polygraph results do not clear Petitioner of the remaining penetration charge. In its motion to dismiss the lewd conduct charge, the prosecution highlighted the difference between the dismissed and non-dismissed charges, stating that the "polygraph examination also convinces the State that the defendant did in fact have the requisite intent (i.e. abuse) to be guilty of Count II." (State's Lodging A-1, p. 122 (parenthetical in original).) Petitioner has pointed to no polygraph questions relating

clearly and specifically to sexual abuse. Rather, the focus was on the alternative mens rea elements of sexual arousal or gratification.

In any event, the Idaho Supreme Court has held that polygraph tests generally are "inadmissible to vouch for the credibility of a witness at trial" without the parties' stipulation for admission. *State v. Perry*, 81 P.3d 1230, 1235 (Idaho 2003). Polygraph tests "violate[] the province of the fact-finder to assess the credibility of the witnesses in a state court proceeding." *Id.* at 236. Because polygraph tests are not admissible at trial, a motion for a new trial based on polygraph testing would have been denied.

The Court further rejects Petitioner's argument that the Presentence Investigation Report and Dr. Kenneth Lindsey's psychosexual report show that "his crime was not sexual in nature at all." (Dkt. 37, p. 4.) As with the polygraph, the Court concludes that the psychosexual evaluation focused on the alternative mens rea elements of sexual arousal or gratification and did not adequately address sexual abuse.

In his introduction to the report, Dr. Lindsey addressed the mens rea issue as follows:

> While understanding an offender's intent vis-a-vis his sex crime is essential to the task of performing a psychosexual evaluation, it is more commonly the case that offenders pleading guilty of Lewd Conduct or Forcible Sexual Penetration did in fact intend to sexually arouse or sexually gratify themselves or their victims, with the latter intentions clearly manifest in the actions they accompany. In contrast, intentionality in the current matter is less easily resolved because of the discrepancy between the violence Mr. Paulk perpetrated against the victim's genital area, on the one hand, and his denial of any sexual intent whatsoever, on the other.

(State's Lodging A-13, Eval., p. 1.)

**MEMORANDUM DECISION AND ORDER - 19**

No jury would take Dr. Lindsey's conclusion at face value, nor would the prosecutor. Delving into the facts beneath the conclusions of Dr. Lindsey shows that Petitioner could have concealed from Dr. Lindsey an intent to sexually abuse the victim because Petitioner sought to manipulate his sexual deviance testing.

Importantly, Petitioner's results on the Abel Assessment for Sexual Interest-3 (AASI-3)—a test specifically designed to show sexual deviance—came back "invalid due to an attempt on his part to present himself in an overly favorable light." (*Id.*, p. 12.) As to the Multiphasic Sex Inventory II (MSI-II) test, Dr. Lindsey wrote:

> [Petitioner] again presented himself in an overly favorable light, responding defensively to test items. His scores on many scales and indices thus are submerged and provide limited information for interpretative purposes. Mr. Paulk does not report on the MSI-II ever having acted out forcible sexual assault behaviors and denies ever having had sexual interests, thoughts, or desires involving a child or involving force or rape. He denies ever having physically abused a child.

(*Id.*, Eval., p. 12-13.)

In addition, Petitioner engaged in behavior prior to testing aimed at skewing the results in his sexual deviance testing, as he confessed to Dr. Lindsey:

> As to the AASI-3 VRT test, which was to assess his sexual interests, Petitioner's "findings are of questionable validity. On arriving at my office for the test, he voiced some knowledge as to how sexual interests are measured with the AASI-3. On questioning him, he told me that he had spoken with one of the other inmates at the Bonneville County Jail about psychosexual evaluations and the AASI-3. Thus, while he produced an AASI-3 VRT that is within normal limits for a young adult male (showing interests in adult females and well-developed adolescent females only), he may have achieved that result by modifying his approach to the task.

> Thus, I have no valid information regarding Mr. Paulk's
> sexual interests aside from that gathered via my interview
> with him and via the two polygraph examinations.

(*Id*.)

Another direct effort at Petitioner's concealment of relevant facts was that Dr. Lindsey also reported that Petitioner "made a disclosure about his own childhood abuse that he asked me to "please keep between me and you." Nevertheless, Dr. Lindsey noted in his report that Petitioner reported that he himself "he had been sexually molested by an older male when he was young." (*Id*., Eval., p. 6.)

The manipulation of the sexual deviance testing is related to the issue of intent to sexually abuse. At sentencing, the state district court emphasized the difference between sexual gratification and sexual abuse in its remark: "The Court can't resolve in my own mind 100 percent that there were not some sexual deviancy components to this offense, not necessarily for the intent for sexual gratification, but in terms of the deviant sexual injury that you inflicted upon this child." (State's Lodging A-3, p. 727.)

Finally, the Court rejects Petitioner's third argument that later legislative action shows that the facts presented to the jury in his case do not meet the mens rea requirement of the statute in effect when he was convicted. The Court concludes that the facts presented to the jury support a finding of "sexual abuse," as the statute read at the time of Petitioner's conviction. The new statute omits any sexual intent, but that has no bearing on Petitioner's conviction. Interestingly, the new statute's omission of that element may reflect not only the legislature's intent to corral those offenses for which

there is a non-sexual privacy or physical injury associated with the penetration, *but also those cases for which a sexual intent is present but is more difficult to prove.*

For all of the above reasons, Petitioner has not shown it is reasonably probable that the trial court would have granted a new trial on the penetration charge. There is nothing in the record showing that the penetration count verdict is contrary to law or the evidence presented at trial. Petitioner's psychosexual report contains both helpful and harmful information, and neither it, nor the polygraph test focused on sexual abuse. Therefore, Petitioner's counsel did not perform deficiently by not filing a motion for a new trial on the penetration charge, and no prejudice to Petitioner's defense occurred.

## B. Discussion of Sexual Arousal or Gratification Mens Rea

The Court also agrees with Respondent's position that there was sufficient evidence presented at trial to support the jury's findings that Petitioner committed the act of placing his fingers in the victim's vagina and pressing down for sexual arousal or gratification. For example, in addition to all of the above, Officer Joseph Pratt testified that he detected semen on the bed that was less than 24 hours old where the injury had occurred. (State's Lodging A-3, pp. 617-620.) Pratt and another officer testified that Petitioner had explained the presence of semen by saying that he had masturbated in the bathroom and must have had semen on his hands and wiped it on the bed when he was changing the victim's diaper. Pratt, however, testified that the semen looked like it had been deposited there as a spatter and not a wipe. (*Id.*)

Petitioner counters that the polygrapher specifically "found no deception in the 'no' answer to the question '[d]id you masturbate/ejaculate while [L.B.] was in the room?'" (State's Lodging A-13, Eval., p. 18.) However, as noted above, polygraph results are inadmissible. Further, even if Petitioner had just masturbated in the bathroom privately before injuring L.B.'s vagina, the jury could have inferred that he was still thinking about sexual arousal and gratification at the time he opened her diaper. The masturbation explanation is not necessarily a point of exoneration on mens rea grounds, as Petitioner asserts.

The Court also considers that, because Petitioner allegedly chose the child's vagina as the object of his anger, the jury could have determined that there was "no possibility that the act was committed with an innocent intent." *State v. Smith*, 357 P.3d 1285, 1288 (Idaho Ct. App. 2015). In other words, common experience shows that an angry male adult is likely to strike or slap a toddler's face, hand, back, or buttocks, not thrust his fingers forcefully into her vagina. As Dr. Lindsey noted, with rare exception, adult acts perpetrated upon children that involve their sexual organs do not occur without some type of sexual intent on the adult perpetrator's part. (State's Lodging A-13, Eval., p. 1.)

Based on the totality of the information available for a motion for a new trial, the Court concludes that Petitioner has not shown that a motion to dismiss the penetration charge would have been granted. Even though the psychologist's opinion tends to corroborate Petitioner's assertion that there was no sexual arousal or gratification intent,

it is based largely on Petitioner's self-reporting and the polygraph results. As noted above, Petitioner manipulated the sexual deviance tests and received invalid results.

In addition, Petitioner's several different stories to police officers also show his potential for deception. Petitioner was untruthful to investigating officers by saying the victim was injured by a fall onto a plastic storage tote; that his knee gave out and he slipped, causing his finger to accidentally enter the victim's vagina; that his finger accidentally entered the victim's vagina when he was attempting to clean her with a baby wipe; and that his finger slid inside her vagina when he was attempting to move her. (State's Lodging A-13, Police Report, p. 17.)

Finally, after officers confronted him about his nonsensical shifting stories, Petitioner reported this version to Officer Kyle Christopherson:

> [H]e was "pushing her down on the bed out of anger" and "his fingers were penetrating her vagina" but "was not doing it as 'punishment'." He stated that he did not know why he was doing it and said, "I know I'm fucked."

(State's Lodging A-13, Eval., p. 5.)

While a cursory look at Petitioner's new evidence seems to support his argument, a careful review of the psychosexual report shows that it contains as much harmful as helpful information. Again, the verdict is not *contrary to* law or the evidence presented at trial, and Petitioner is prohibited from arguing simply "insufficient evidence" on a motion for new trial. Because Petitioner has not shown a reasonable probability that a motion for a new trial would have been granted, trial counsel did not perform deficiently in failing to raise the claim, and Petitioner's defense was not prejudiced.

### C. Discussion of Direct Appeal Counsel Claims

Petitioner brings two ineffective assistance of *direct appeal* counsel claims based on the same facts—that Petitioner had a "right" to a new trial, and that the State failed to prove elements of sexual intent relative to the statutory requirement and legislative intent of the penetration claim. (Dkt. 12, p. 11.) The *Strickland* principles set forth above also apply to determining ineffective assistance of appellate counsel claims. *Evitts v. Lucey*, 469 U.S. 387 (1985). To show prejudice on appeal, a petitioner must show that his attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *See Miller*, 882 F.2d at 1435.

"Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable claim' suggested by a client." *Id*. at 754. "[T]he process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate

advocacy." *Burger v. Kemp*, 483 U.S. 776, 784 (1987) (internal citations and punctuation omitted).

For the same reasons listed above, the Court rejects de novo Petitioner's claim that direct appeal counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims discussed directly above. Petitioner has not shown that the omitted claims were stronger than the ones raised on direct appeal. Therefore, neither deficient performance nor prejudice has been shown.

Petitioner's second direct appeal counsel claim—that counsel should have raised a claim that the State failed to prove the element of sexual intent relative to the statutory requirement and legislative intent of the penetration claim—is also unsupported by the discussion above. It is rejected for those reasons, specifically, failure to show deficient performance or prejudice to Petitioner's appeal.

## 6. Conclusion

Petitioner's Confrontation Clause claim and his ineffective assistance of trial and direct appeal counsel claims fail to meet the standards for a grant of federal habeas corpus relief. For these reasons, Petitioner's Amended Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice. Petitioner's Motion to Reconsider will be granted to the extent that the Court has considered the merits of the ineffective assistance claims de novo, rather than reviewing Petitioner's cause and prejudice analysis, but no relief is warranted. Judgment will be entered accordingly.

# ORDER

**IT IS ORDERED:**

1.   Petitioner's Motion for Reconsideration (Dkt. 36) is GRANTED IN PART, only to the extent that the Court has considered the merits of the claims at issue and determined that habeas corpus relief is not warranted.

2.   Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 12) is DENIED and DISMISSED with prejudice.

3.   The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: June 17, 2019

B. Lynn Winmill
U.S. District Court Judge